(No. 39835.—

CLARENCE CHRISTEN *et al.,* Appellants, *vs.* THE COUNTY OF
WINNEBAGO, Appellee.

*Opinion filed June 16, 1966.*

SOLFISBURG, J., dissenting.

DAVID CONNOLLY and RALPH S. ZAHM, both of Rock-
ford, for appellants.

WILLIAM R. NASH, State's Attorney, of Rockford, for
appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

As introduced in the 74th General Assembly, House Bill
1684 authorized all county boards, by resolution and without
referendum, to issue general obligation bonds for the con-
struction, reconstruction or remodeling of courthouses. Dur-
ing the course of its passage through the General Assembly
the bill was amended to apply only to counties having a popu-

lation between 200,000 and 1,000,000. (Ill. Rev. Stat. 1965, chap. 34, pars. 2161-2166.) The issue in this case is whether the statute, as enacted, creates an arbitrary classification of counties in violation of the state and federal constitutions.

Acting under this statute, the Board of Supervisors of Winnebago County has authorized, without a referendum, a $5,000,000 bond issue to cover the cost of reconstructing, remodeling and repairing the present courthouse. On advice of counsel, the plaintiffs, who are the chairman of the Winnebago County Board of Supervisors and the county clerk, refused to execute the bonds and brought this action for a declaration that the statute violates section 22 of article IV of the state constitution, the due process clauses of the State and federal constitutions, and the equal protection and privileges and immunities clauses of the federal constitution. The defendant, the county of Winnebago, counterclaimed for a writ of *mandamus* to compel the plaintiffs to execute the bonds and advertise for their sale. Certain facts were stipulated, and the testimony of witnesses was heard. The court held the statute valid and directed the issuance of a writ of *mandamus* as prayed in the counterclaim. The plaintiffs have appealed directly to this court.

Apart from the challenged statute, a county may raise funds for the construction or reconstruction of courthouse facilities by the issuance of general obligation bonds, when authorized to do so at a referendum election. (Ill. Rev. Stat. 1965, chap. 34, pars. 501, 502.) Or the county may proceed under the Public Building Commission Act, (Ill. Rev. Stat. 1965, chap. 34, pars. 3301-3325,) which provides for financing by the issuance of revenue bonds which are to be retired from rentals received for the use of the new facilities. At a referendum election in 1964 the voters of Winnebago County rejected a proposal to issue courthouse bonds in the sum of $3,750,000. Two commissions have been appointed in Winnebago County under the Public Building Commis-

sion Act, but both were dissolved without having acted to provide improved courthouse facilities.

Section 22 of article IV of the constitution provides that: "The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: for—* * * Regulating county and township affairs; * * * Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever."

The principle governing the application of this provision of the constitution has often been stated. "Legislative classification based upon population is valid, if there is a reasonable relationship between the objectives sought to be accomplished by the law and the population differences fixed by the General Assembly. (*Du Bois* v. *Gibbons,* 2 Ill.2d 392, 399; *Gaca* v. *City of Chicago,* 411 Ill. 146, 149.) But in the absence of such a relationship, legislative classification upon the basis of population is discriminatory and invalid. *Giebelhausen* v. *Daley,* 407 Ill. 25, 37; *Kremers* v. *City of West Chicago,* 406 Ill. 546, 551; *Hunt* v. *County of Cook,* 398 Ill. 412." (*People ex rel. Adamowski* v. *Wilson,* 20 Ill.2d 568, 580.) Although the plaintiffs have also argued the applicability of the due process, equal protection and privileges and immunities clauses, the decisive issue remains the same as that presented under section 22 of article IV of the constitution of Illinois—whether the statutory classification is rational in view of the purpose of the legislation. The case will therefore be discussed in terms of that issue.

The unmistakable purpose of House Bill 1684 is to eliminate, in those counties that fall within the specified populalation limits, the requirement of a referendum which in all other counties is a prerequisite to the issuance of general obligation bonds for the construction, reconstruction or remodeling of courthouses. The question for decision, therefore, is whether in the six counties included within the statu-

tory limits, (DuPage, Lake, St. Clair, Madison, Winnebago and Kane), conditions exist which justify the removal of the requirement of a referendum in those counties, while retaining it in all others.

That there is a great need for improved courthouse facilities has been explicitly recognized by the General Assembly in its findings and declarations of policy set forth in the Public Building Commission Act. (Ill. Rev. Stat. 1965, chap. 34, par. 3302.) The record in this case contains the 1963 and 1964 reports of committees of the Illinois Judicial Conference relating to courthouses, courtrooms and related court facilities. The 1963 report states: "It is clear beyond any doubt that courtrooms and related court facilities, as measured by acceptable minimum standards, are seriously deficient in most of the 101 counties outside of Cook County. In all such counties some measure of upgrading is necessary, and in most of these counties the scope of improvement essential to meet the needs of the judicial system is substantial." The report noted that 62 of the courthouses in Illinois were constructed before 1900, 30 in the period 1900-1940, and only 4 since 1940, and it stated: "The entire picture demonstrates a range of deficiencies almost appalling in scope."

While the findings of the General Assembly as to the need for improved facilities for governmental operations generally, and the reports of the Judicial Conference committees with respect to courtrooms and related facilities, clearly establish a critical need for improved facilities in most of the 102 counties in the State, they do not establish that the need is any greater in the counties included within the statutory limits than in other counties.

Statutory classifications on the basis of population are ordinarily justified on the ground that differences in degree that result from increased populations can justify different treatment. "Even if the difference be one of degree, only, it may be sufficiently great to require a difference in meth-

ods of municipal action." (*Mathews* v. *City of Chicago*, 342 Ill. 120, 133.) The statute before us, however, is attempted to be supported upon a different assumption—that a particular intermediate population range bears a special relationship to the rate of population increase which, in turn, affects the degree of potential courthouse use. It is said that in the counties included within the statutory limits "an accelerated growth factor" exists which is sought to be demonstrated by statistical samplings which show that the average rate of population increase between 1940 and 1950 and between 1950 and 1960 is higher in those counties than the average rate of increase in the excluded counties.

In our opinion, however, the statistics with respect to rate of growth do not support the contention advanced. During the decade 1940 to 1950 the percentage increases in population in the included counties were:

| County | Percentage Increase |
|--------|---------------------|
| Du Page | 49.4 |
| Lake | 47.9 |
| St. Clair | 23.4 |
| Madison | 22.1 |
| Winnebago | 25.8 |
| Kane | 15.5 |

During the same decade the highest rates of increase among the excluded counties were:

| County | Percentage Increase |
|--------|---------------------|
| Champaign | 50.3 |
| McHenry | 35.6 |
| Tazewell | 30 |
| Kankakee | 20 |
| De Kalb | 18.6 |
| Rock Island | 17.9 |

During the decade 1950 to 1960 the percentage increases in the included counties were:

| County | Percentage Increase |
|--------|---------------------|
| Du Page | 102.8 |
| Lake | 64 |
| Kane | 38.5 |
| Winnebago | 37.7 |
| St. Clair | 27.4 |
| Madison | 23.2 |

During the same decade the highest rates of increase among excluded counties were:

| County | Percentage Increase |
|--------|---------------------|
| McHenry | 66 |
| Will | 42.6 |
| Tazewell | 31 |
| De Kalb | 26.7 |
| Kankakee | 25.2 |
| Champaign | 24.8 |

The "accelerated growth factor" theory is based on the average rate of increase in population in the included counties. That average rate is greatly influenced by the inclusion of Du Page and Lake counties, which show the highest rate of increase in the state. It is stipulated, however, that in Du Page County there is no plan to build a new courthouse structure or to make use of House Bill 1684. Rather, that county plans to continue to expand and improve its existing courthouse out of general funds, without issuing bonds. In Lake County new facilities are under construction by the Public Building Commission. But even apart from any question concerning the accuracy of average rates, in our opinion the statutory classification is not substantially uniform. Too many excluded counties show a rate of population increase in excess of that of included counties. These excluded counties are discriminated against.

If it is the rate of population increase that generates the need for eliminating the requirement of a referendum, the problem could be approached directly by distinguishing

among counties on the basis of a specified percentage increase. Such a classification would not close the door to other rapidly expanding counties whose population falls in the excluded range. The provision in the act before us operates in a random fashion, even when considered upon an accelerated growth basis. In our opinion House Bill 1684 violates the provisions of section 22 of article IV. The judgment of the circuit court must therefore be reversed.

*Judgment reversed.*

Mr. Justice Solfisburg, dissenting.