(Nos. 61724, 61725 cons.—

*In re* BELMONT FIRE PROTECTION DISTRICT *et al.* (Terrence Vavra *et al.,* Appellants. v. Belmont Fire Protection District *et al.,* Appellees).

*Opinion filed February 21, 1986.*

William F. White, of the Law Offices of Frances J. White, of Downers Grove, for appellants.

Charles E. Petersen, of Shearer, Blood, Argrella & Boose, of St. Charles, for appellees.

Gerald M. Gorski and Thomas W. Good, of Gerald M. Gorski, Ltd., of Wheaton, for *amicus curiae* Village of Woodridge.

JUSTICE RYAN delivered the opinion of the court:

These two consolidated cases involve the constitutionality of "An Act to add Section 19a to 'An Act in relation to fire protection districts.'" (Pub. Act 83—1454;

Ill. Rev. Stat., 1983 Supp., ch. 127½, par. 38.2a) (the Act). The circuit court of Du Page County found section 19a to be violative of the special-legislation provision of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, sec. 13). A direct appeal to this court was taken pursuant to our Rule 302(a)(1) (94 Ill. 2d R. 302(a)(1)).

Section 19a of "An Act in relation to fire protection districts" is the General Assembly's effort to remedy the alleged dangers and disadvantages of multiple fire protection districts serving one municipality. Section 19a creates a mechanism whereby fire protection services within a given municipality may be consolidated into a single fire protection district. The relevant provisions of section 19a are:

> "(a) In any county having a population of more than 600,000 but less than 1,000,000, territory located within the corporate limits of any municipality and which is included within the limits of any fire protection district may be disconnected from the district and transferred to another district providing fire protection service within such municipality and to which the territory is contiguous, in the manner hereinafter set forth ***." Ill. Rev. Stat., 1983 Supp., ch. 127½, par. 38.2a(a).

On January 3, 1985, two petitions were filed in the circuit court of Du Page County requesting a referendum for the purpose of voting for or against the disconnection and transfer of certain territory from the Belmont and Downers Grove Estates fire protection districts to the Lisle-Woodridge fire protection district. The petitions essentially set forth the requirements of the Act. See Ill. Rev. Stat., 1983 Supp., ch. 127½, par. 38.2a(c).

The petitions were set for hearing on January 25, 1985. The Downers Grove Estates and the Lisle-Woodridge fire protection districts filed appearances on January 24. The Belmont fire protection district filed its appearance on January 25. The Belmont and Downers

Grove Estates fire protection districts, as respondents, objected to the petitions and moved to dismiss the petitions on the ground that the classification restricting application of section 19a to counties with a population between 600,000 and 1 million violated the constitutional prohibition against special legislation.

At the hearing, counsel for the Belmont and Downers Grove Estates fire protection districts introduced maps of Kane, McHenry, De Kalb, Lake, Will, Sangamon, Winnebago, and Champaign counties showing fire protection districts and municipal boundaries. The authenticity of the maps was established. Counsel also introduced a certified copy of the April 1, 1980, population count for the 102 counties in the State of Illinois. According to this census, the four most populated counties in Illinois were Cook (5,253,190), Du Page (658,858), Lake (440,388) and Will (324,460). Counsel thus attempted to demonstrate by these exhibits that since municipalities in other counties of varying population were being served by multiple fire protection districts, the population classification was neither based upon any rational difference of situation or condition, nor was it rationally related to the object and purpose of the legislation.

The circuit court of Du Page County dismissed the petitions. The court found that the population classification did not bear a rational relationship to the objective sought to be accomplished by the legislation, thus violating section 13 of article IV of the Illinois Constitution of 1970. Petitioners filed notices of appeal to this court, in both cases. This court allowed petitioners' motion to consolidate on appeal. The village of Woodridge was given leave to file an *amicus curiae* brief in support of the petitioners' position.

Section 13 of article IV of the Illinois Constitution of 1970 provides:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination."

Section 13 replaced section 22 of article IV of the 1870 Constitution. Section 22 contained an extensive list of specific cases which were considered to be local or special in nature and thereby prohibited. Section 22 also contained a catchall statement: "In all other cases where a general law can be made applicable, no special law shall be enacted." (See Ill. Annot. Stat., 1970 Const., art. IV, sec. 13, Historical Note, at 244-45 (Smith-Hurd 1971).) Under the 1870 Constitution, the General Assembly was generally the final constitutional authority for determining whether a general law could be made applicable. G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 222 (1969).

Section 13 of article IV of the 1970 Constitution eliminated the obsolete "laundry list" in the 1870 Constitution and retained the principle that the General Assembly may not pass a special or local act when a general act is or can be made applicable. Section 13, however, rejected the previous practice of deferring to legislative discretion in determining whether a general law could be made applicable. Under the 1970 Constitution, whether a general law is or can be made applicable is specifically provided to be a matter for judicial determination.

In *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, this court, for the first time, decided the constitutionality of a statute on the basis of section 13 of article IV of the 1970 Constitution. After noting that the 1970 Constitution rejected the rule enunciated in earlier decisions of this court which held that whether a general law can be made should be a legislative rather than a judicial determination, this court concluded that "although the scope of judicial review of legislation is to that extent en-

larged, section 13 requires no change in our definition of when a law is 'general and uniform,' 'special,' or 'local.' " (51 Ill. 2d 103, 110.) The *Bridgewater* court applied traditional equal protection tests which this court had used in evaluating the validity of legislative classifications under the 1870 Constitution. Although the constitutional inquiry under the 1970 Constitution is "[w]hether a general law is or can be made applicable," we believe that, in considering the validity of classifications to which the law applies, this court's analysis in *Bridgewater* requires an application of those well-settled equal protection principles developed prior to the 1970 Constitution.

A special law confers "some special right, privilege or immunity or impose[s] some particular burden upon some portion of the people of the State less than all." (*People v. Wilcox* (1908), 237 Ill. 421, 424.) The purpose of the special legislation prohibition of section 22 of article IV of the 1870 Constitution was "to prevent the enlargement of the rights of one or more persons and the impairment of, or discrimination against, the rights of others." (*Gaca v. City of Chicago* (1952), 411 Ill. 146, 149.) Although section 22 was designed to prevent arbitrary discrimination, it did not forbid legislative classification, "for perfect uniformity of treatment of all persons is neither practical nor desirable." (*Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 193, *cert. denied* (1952), 344 U.S. 837, 97 L. Ed. 651, 73 S. Ct. 47.) Accordingly, the legislature may, in the enactment of general laws, classify counties and municipalities on the basis of population (*Alexander v. City of Chicago* (1958), 14 Ill. 2d 261; *Cummings v. City of Chicago* (1893), 144 Ill. 563), as well as territorial differences (*People ex rel. Adamowski v. Public Building Com.* (1957), 11 Ill. 2d 125).

In order for a legislative classification by population

to withstand constitutional scrutiny, it cannot be arbitrary. The legislature cannot create a class through the medium of an arbitrary statutory declaration in order that the class may be the recipient of special and exclusive legislative favors. (*People v. Brown* (1951), 407 Ill. 565, 584.) To render a statutory classification valid, the classification must be based upon a rational difference of situation or condition found to exist in the persons or objects upon which the classification rests. *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 112; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 578; *Hunt v. County of Cook* (1947), 398 Ill. 412, 419; *Mathews v. City of Chicago* (1930), 342 Ill. 120, 128.

In considering the special-legislation proscription of our constitution, in addition to a reasonable basis for the classification, the classification must also bear a rational and proper relation to the evil to be remedied and the purpose to be attained by the legislation. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 112; *Christen v. County of Winnebago* (1966), 34 Ill. 2d 617, 619; *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 460; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399; *Gaca v. City of Chicago* (1952), 411 Ill. 146, 150.) Thus, there is a two-prong test.

The burden of demonstrating the unreasonableness or arbitrariness of a classification lies with the person attacking its validity. (*People v. Palkes* (1972), 52 Ill. 2d 472, 477.) Reasonable doubts must be resolved in favor of upholding the validity of legislation establishing a classification. (*Mathews v. City of Chicago* (1930), 342 Ill. 120, 128; *People v. Gordon* (1916), 274 Ill. 462, 476.) Furthermore, we must bear in mind that "[t]here is always a presumption that the General Assembly and its committees acted conscientiously and did their duty in making a survey of the conditions prevailing in the [counties] of the State before enacting the classification legislation \*\*\*." *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392,

399.

As introduced in the 83rd General Assembly, House Bill 2569 provided that *in counties of over 100,000 population,* territory lying both in a municipality and a fire protection district may be disconnected and transferred to another fire protection district serving at least 70% of that municipality. During the course of its passage through the General Assembly, however, the original bill was amended by the Senate to apply to counties having a *population between 600,000 and 1 million.* (Ill. Rev. Stat., 1983 Supp., ch. 127½, par. 38.2a.) The House debates indicated that the purpose of the Senate amendment was to limit the bill's application to Du Page County. See House Debates on House Bill 2569, 83rd Ill. Gen. Assem., June 21, 1984, at 91.

It is respondents' primary contention that the provision of the Act limiting its application to counties with a population between 600,000 and 1 million renders the Act a special or local law. First, respondents argue that since the evil which the legislation is designed to remedy is no different in Du Page County than in the remaining counties of this State, the population classification is an artificial distinction made solely for the purpose of making Du Page County a special class. Second, respondents further argue that the classification bears no reasonable relation to the objective sought to be accomplished.

Application of the above two-prong test leads us to conclude that section 19a constitutes special legislation. First, we agree with respondents that there is no reasonable basis for the population classification, since there is no basis, in reason and principle, for regarding Du Page County as a distinct and separate class for the purpose of this particular legislation. The record demonstrates that there is no substantial difference between the situation existing in Du Page County, and the conditions which exist in Kane, McHenry, De Kalb, Lake,

Will, Sangamon, Winnebago, and Champaign counties insofar as municipalities that are served by multiple fire protection districts is concerned. We can perceive of no rational reason why a municipality served by multiple fire protection districts in a county with a population between 600,000 and 1 million can be said to differ from a municipality which is served by multiple fire protection districts in a county with less than 600,000 or more than 1 million inhabitants. If a real need exists to eliminate the alleged disadvantages and dangers of multiple fire protection districts serving one municipality, then the same need to remedy this evil also exists in other counties as well, regardless of the level of the population of the county. Because section 19a denies municipalities with similar needs in other similar counties the privilege of consolidating fire protection services into a single fire protection district, the population classification is an arbitrary distinction not founded upon any rational or substantial difference of situation or condition and therefore violates our constitution.

Petitioners attempt to establish the reasonableness of the classification, however, by arguing that the classification is an "open" class, applicable to all counties that presently have or might hereafter have, populations between 600,000 and 1 million. Since the Act is applicable to all counties as they pass from a low density, essentially rural-in-character area, to a high density, suburban-in-character area, petitioners maintain that the classification is based on reasonably foreseeable demographic circumstances and is designed to remedy problems created by changes in such circumstances. We find petitioners theory unpersuasive. The arbitrariness of the population classification appears when we consider Will County. Will County had a 1980 population of 324,460. The municipality of Mokena, located in Will County, is presently served by the Mokena and Frankfort fire protection dis-

tricts. Assuming Will County's growth progresses to reach the population parameters of section 19a, the evil of the municipality of Mokena being served by more than one fire protection district will not suddenly appear when the 600,000th person arrives in Will County or automatically disappear when Will County reaches a population of 1 million. The respondents introduced evidence of several other similar situations that exist in counties other than Du Page. Thus, there seems to be no reason why a municipality in a county with less than 600,000 inhabitants should be deprived of the right to consolidate fire protection services into a single fire protection district, while municipalities in Du Page County are allowed this privilege simply because Du Page contains a population between 600,000 and 1 million. Because there appears no fair reason for the law which would not require with equal force its extension to other counties of smaller population which are not affected, the population classification is arbitrary and unreasonable.

Not only is there no reasonable basis for the legislature's differentiation between Du Page County and the remaining counties of the State, but also, as to the second prong of the test, in view of the object and purpose to be accomplished, we believe that the countywide population classification fails to bear a rational relationship to the purpose of the Act and the evil it seeks to remedy. Petitioners maintain that the purpose of section 19a is to promote the redrawing of fire protection districts to conform to the boundaries of the underlying municipalities. Petitioners suggest the evil the legislation seeks to remedy is that of having multiple fire protection districts serving one municipality. It is difficult to understand, however, what possible connection there can be between the requirement that a county have a population between 600,000 and 1 million and the necessity or desirability of consolidating fire protection services within a

given municipality into a single fire protection district.

Petitioners urge us to take judicial notice of the unique geographic, demographic, and political circumstances arising from the phenomenal growth and development of Du Page county. Petitioners indicate that one consequence of this unprecedented suburban growth has been to render obsolete many of the existing fire protection boundaries. Petitioners argue that given the increasingly high density suburban nature of Du Page County, the legislature could thus rationally conclude that when Du Page County reached this level of urbanization, a multiplicity of fire protection districts having boundaries which bear no reasonable relationship to those of their constituent municipalities would be inconsistent with the promotion of the public health and welfare.

The flaw with petitioners' argument is that the classification of section 19a is not based on the level of urbanization or the density of population of a county. The legislation addresses only the raw numbers of population, without regard to the questions of urbanization or density. In *Christen v. County of Winnebago* (1966), 34 Ill. 2d 617, this court found unpersuasive a similar argument. The statute in *Christen* operated to exempt counties with a population between 200,000 and 1 million from the necessity of holding a referendum prior to the issuance of general obligation bonds for the construction, reconstruction, or remodeling of court houses. Six counties fell within the population parameters. Although the evidence strongly suggested that there existed an abiding need for improved courtroom facilities, there was no evidence that the need was any greater in the six counties included within the statutory limits than in any other county in the State. It was argued, however, that an "accelerated growth factor" existed in these six counties and that this intermediate population range bore a special relationship to the rate of population increase

which, in turn, affected the degree of potential court-
house use. This court disagreed and concluded that there
was no correlation between the rapid growth rate of a
county and whether it fell within the population range of
the statute. This court further reasoned that if the rapid
rate of increase in population was the cause of the evil
sought to be remedied by the legislation, then a county
classification on the basis of this "accelerated growth
factor," and not on the basis of population, would be re-
quired to sustain the validity of the legislation. 34 Ill. 2d
617, 621-23.

This same reasoning is applicable to the present case.
The rational relation which the petitioners argue is
present is the substantial rate of increase in population
of Du Page County. As the *Christen* court concluded,
however, a statute which sets forth an intermediate pop-
ulation range as a classification does not bear a special
relationship to the rate of population increase. If, as the
petitioners suggest, there is an evil in having a munici-
pality which is experiencing rapid growth served by
more than one fire protection district, then it would ra-
tionally follow that the statute in question should be
based on either the population, urbanization, or density
of the municipality involved, not the population of the
county in which the municipality lies. Many small towns
in other counties have also experienced rapid growth and
are now faced with the same problems petitioners urge
are present in Du Page County. Accordingly, we hold
that the classification of counties by population in this
case does not bear a reasonable and proper relation to
the purposes of the Act and the evil sought to be reme-
died. *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 111.

We also reject petitioners' suggestions that the Gen-
eral Assembly has authority to address a problem by de-
gree. In *Grace v. Howlett* (1972), 51 Ill. 2d 478, 487-88,
we held unconstitutional as special legislation a section

of the automobile no-fault liability statute which discriminated with regard to limits on recovery amounts between those injured by private vehicles and those injured by commercial vehicles. We based our determination of statutory unreasonableness on the differences in treatment effected by the statute and concluded:

"Unless this court is to abdicate its constitutional responsibility to determine whether a general law can be made applicable, the available scope for legislative experimentation with special legislation is limited, and *this court cannot rule that the legislature is free to enact special legislation simply because 'reform may take one step at a time.'* [Citation.]" (Emphasis added.) 51 Ill. 2d 478, 487.

Notwithstanding the principles that presumptions are in favor of the validity of an act and reasonable doubts are to be resolved in favor of its validity, we are compelled to hold "An Act to add section 19a to 'An Act in relation to fire protection districts,' " unconstitutional under section 13 of article IV of the Illinois Constitution of 1970.

For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*