SNUGGERY PUB, INC., Plaintiff-Appellant, v. THE VILLAGE OF MOUNT PROSPECT *et al.*, Defendants-Appellees (Davdan, Inc., *et al.*, Petitioners-Intervenors).

First District (4th Division)    No. 87—2163

Opinion filed November 3, 1988.

Louis P. Vitullo, James M. Mulcahy, and Georgia L. Vlamis, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellant.

Arthur M. Holtzman, of Pedersen & Houpt, P.C., of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Snuggery Pub, Inc., appeals from the judgment of the circuit court of Cook County that found the annexation amendment to section 7—1—13 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13) to be constitutional. Plaintiff raises the following issues on appeal: (1) whether the amendment constitutes special legislation; (2) whether the use of the term "creek" in the amendment renders it vague and therefore unconstitutional; and (3) whether the trial court erred in granting defendants' motion for summary judgment and denying plaintiff's cross-motion for summary judgment.

We affirm.

Defendants herein are the Village of Mount Prospect (Village); Carolyn Krause, mayor; trustees Ralph Arthur, Gerald Farley, Leo Floros, Norma Murauskis, George Van Geem, and Theodore Wattenberg; John Dixon, Village manager; and Carol Fields, Village clerk. On March 3, 1987, defendants passed an ordinance which sought to

involuntarily annex unincorporated territory in Cook County which contained less than 60 acres and was bounded by a municipality and Higgins Creek. Plaintiff operated a business on a parcel of land within the territory to be annexed. The annexation statute was amended for the purpose of allowing municipalities to involuntarily annex unincorporated territories containing no more than 60 acres and located within a county having a population in excess of 400,000 and bounded by a creek. Prior to this amendment, the statute allowed a municipality to annex unincorporated territory that was wholly bounded by one or more municipalities and by a river or lake.

Subsequent to passage of the ordinance, plaintiff filed a complaint in the circuit court of Cook County for injunctive and declaratory relief. Plaintiff challenged the constitutionality of the annexation amendment and defendants' action thereunder. Plaintiff further alleged that if the ordinance was upheld the defendants could unilaterally annex its business and cause it to suffer economic hardship.

When plaintiff filed its motion for summary judgment, it also provided to the court supporting memoranda and depositions of Bruce Bruckelmeyer, a registered surveyor and engineer, and Roland Pennequin, an unregistered surveyor. Bruckelmeyer stated during his deposition that he had never supervised plats of annexation involving a creek, river or any waterway as a boundary to the annexed territory. He further stated that he had not field checked any of the boundaries of the annexed territory at issue. Pennequin also testified that he neither field inspected nor surveyed the territory at issue.

Defendants supported their motion for summary judgment with affidavits of Robert Murry, a registered land surveyor, and Charles Bencic, an engineer for the Village. Murry stated that he prepared the plat of annexation which is at issue. Bencic noted that he was generally familiar with Higgins Creek.

On June 12, 1987, following oral arguments on the motions for summary judgment, the trial court granted defendants' motion for summary judgment, finding the annexation amendment constitutional.

Plaintiff's first contention is that the annexation amendment constitutes special legislation in violation of section 13 of article IV of the Illinois Constitution. (Ill. Const. 1970, art. IV, §13.) It argues that there is no reasonable basis for the classification based upon population and no rational relationship between the classification and the legislative objective in enacting the statute.

■ Article IV, section 13, of the Illinois Constitution provides that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or

can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, §13.) "A special law confers 'some special right, privilege or immunity or impose[s] some particular burden upon some portion of the people of the state less than all.' " *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 379, quoting *People v. Wilcox* (1908), 237 Ill. 421, 424.

*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, was the first case to decide the constitutionality of a statute on the basis of section 13. Section 13, the court noted, rejected the rule established by previous decisions that whether a general law can be made applicable was a legislative rather than a judicial determination. However, the court concluded that "although the scope of judicial review of legislation is to that extent enlarged, section 13 requires no change in our definition of when a law is 'general and uniform,' 'special,' or 'local.' " (*Bridgewater*, 51 Ill. 2d at 110.) The court went on to apply traditional equal protection tests, which have been used in determining the validity of legislative classifications under the 1870 Illinois Constitution.

*In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, is the most recent case analyzing statutory classifications based on population. In determining the validity of classifications, the *Belmont* court agreed with the *Bridgewater* court that well-settled principles of equal protection developed prior to the 1970 Illinois Constitution should be applied.

A legislative classification or a special law is valid if there is a reasonable basis for the classification and the classification bears a rational relationship between the objective of the statute and the evil it seeks to remedy. (*In re Belmont Fire Protection District*, 111 Ill. 2d at 380; *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 111; *Christen v. County of Winnebago* (1966), 34 Ill. 2d 617, 619.) However, "[t]he legislative classification need not be so broad and comprehensive as to include all evils which might possibly be brought within its terms. Nor need the classification be scientific, logical, or consistent, provided it is not arbitrary ***. [Citation.]" (*Gaca v. City of Chicago* (1952), 411 Ill. 146, 150.) The person who attacks the validity of a classification bears the burden of establishing its unreasonableness or arbitrariness. (*People v. Palkes* (1972), 52 Ill. 2d 472, 477.) Nevertheless, it is important to remember there is a presumption that the General Assembly acted conscientiously in performing a survey of the conditions prevailing in the counties before they enacted the legislative classification. *Gaca*, 411 Ill. at 150.

■ In applying the above principles, we conclude that the annex-

ation amendment does not constitute special legislation. First, plaintiff argues that counties with a population of 400,000 or more (Cook, Du Page, Lake) encounter difficulty in following the voluntary annexation procedures set forth in section 7—1—8 (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—8), which requires the majority vote of the electors residing in the area to be annexed. It suggests that it is cumbersome to obtain the majority vote. On the other hand, defendants argue that there is no reason why other counties in Illinois should be denied the privilege of involuntary annexation. Defendants suggest that the need to have a mechanism for involuntary annexation exists in all counties in the State.

It is not our function to decide whether a mechanism for involuntary annexation is needed in all counties. Perhaps it is an issue the legislature should address. We are here faced with determining whether there is a reasonable basis for the population classification. The burden of establishing the reasonableness or arbitrariness of the population classification rests with plaintiff. (*People v. Palkes* (1972), 52 Ill. 2d 472, 477.) Plaintiff here has not met its burden. The record is devoid of any evidence demonstrating that counties with less than 400,000 inhabitants experience problems similar to those counties with a population exceeding 400,000.

Plaintiff strongly relies on *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, to support its argument. In this case the legislature passed a statute providing for the consolidation of fire protection districts serving the same municipality in those counties with a population of more than 600,000 but less than 1 million. This population classification only included Du Page County. The court found that the statute constituted special legislation and that there was no reasonable basis for regarding Du Page County as a distinct and separate class. The court determined that the classification was arbitrary by analyzing the municipality of Mokena located in Will County. The court stated:

"We can perceive of no rational reason why a municipality served by multiple fire protection districts in a county with a population between 600,000 and 1 million can be said to differ from a municipality which is served by multiple fire protection districts in a county with less than 600,000 or more than 1 million inhabitants. if a real need exists to eliminate the alleged disadvantages and dangers of multiple fire protection districts serving one municipality, then the same need to remedy this evil also exists in other counties as well, regardless of the level of the population of the county." (*In re Belmont Fire Protection*

*District,* 111 Ill. 2d at 382.)

Unlike in *Belmont,* here plaintiff has not shown, nor is it clearly evident, that counties with less than 400,000 inhabitants find it cumbersome to obtain the majority vote under voluntary annexation procedures. Thus, we find that the population classification is not arbitrary and is based upon a rational difference of situation or condition and therefore does not violate our constitution.

■ Under the second prong of the test, we find that the population classification bears a rational relationship to the purpose of the statute and the evil it seeks to remedy. Defendants state that the purpose of the amendment is to allow annexation of unincorporated territory without obtaining the consent of the majority of electors residing in the area to be annexed. Defendants also claim that the evil the legislation seeks to remedy is the difficulty in obtaining such consent.

It is our belief that it was reasonable for the General Assembly to conclude that highly populated counties would experience difficulty following voluntary annexation procedures. In *Giebelhausen v. Daley* (1950), 407 Ill. 25, the court stated:

> "[I]t seems that population may be a proper basis of classification where it is obvious there is a different remedy required, or a condition to be alleviated, which is the result of density or sparsity of population, since it is common knowledge that such a situation sometimes requires more or different facilities to effect the public purpose remedied, and the legislature is presumed to have made an investigation and to have determined the facts before enacting the legislation. In such instances population may furnish a proper foundation, since the law is uniform as to those affected by it." *Giebelhausen,* 407 Ill. at 37.

Plaintiff's next contention is that the amendment is vague, indefinite, uncertain and constitutes an unlawful delegation of legislative power. It argues that the use of a "creek" as a boundary is susceptible to too many interpretations. Plaintiff claims that creeks have no stability or permanence of position to be classified as a boundary.

■ A creek is "[a] small stream less than a river. The term imports a recess, cove, bay or inlet in the shore of a river and not a separate or independent stream." (Black's Law Dictionary 333 (5th ed. 1979).) "Descriptions of [county] boundaries are not construed with the same strictness as are those contained in deeds and contracts, and if the description *** fairly apprises the public of the property involved, it will be considered sufficient. [Citations.]" *People v. Knapp* (1963), 23 Ill. 2d 239, 246.

■ Plaintiff's expert, Bruckelmeyer, acknowledged the fact that

the above problems are not unique to creeks, but that rivers also change directions, flood their banks, or move. Rivers and streams, navigable and nonnavigable, have been used as boundaries. (See E. McQuillin, Municipal Corporations §7.07 (3rd ed. 1988); *People v. Knapp*, 28 Ill. 2d 239.) Here, the area to be annexed and the boundaries enclosing it are readily ascertainable by a close analysis of the plat of annexation and a reading of the description. We must agree with the trial court that the description of Higgins Creek is not so vague as to render the amendment unconstitutional.

Plaintiff's argument that the amendment constitutes an unlawful delegation of legislative power, because "a creek" is not defined, is also without merit. Plaintiff argues that the legislature failed to provide any standards or guidelines for implementing the amendment.

■ The law is clear that the General Assembly cannot delegate its general legislative powers to others. (*Quinn v. Donnewald* (1985), 107 Ill. 2d 179, 188; *Board of Education v. Page* (1965), 33 Ill. 2d 372, 375.) Nevertheless, it may authorize others to perform certain functions which the legislature might properly perform, but cannot perform as understandingly or advantageously as others. (*Board of Education*, 33 Ill. 2d at 375.) Moreover, the Constitution does not require that every detail in the enforcement of a law be established by the General Assembly. The Constitution merely requires the General Assembly to establish intelligible standards to guide one in its enforcement of the laws. (*Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 123.) "The precision of the permissible standard required to be set by the legislature must necessarily vary according to the nature of the ultimate objective and the peculiar problems involved. [Citations.]" *Board of Education*, 33 Ill. 2d at 375.

■ Under the present set of circumstances, a creek is not so undefinable or unascertainable that the General Assembly has to spell out what shall constitute a creek. As mentioned earlier, Higgins Creek is discernible from an analysis of the plat of annexation. Hence, we do not find that the amendment demonstrates an unlawful delegation of legislative power.

Plaintiff's final contention is that the trial court erred in granting defendants' motion for summary judgment and denying its motion for the same.

■ The principles governing summary judgment are well established. Summary judgment will be granted if there is no genuine issue of material fact, *i.e.*, "[i]f there is present any fact or facts on which reasonable persons may disagree, or inferences which may be fairly drawn from those facts and may lead to different conclusions, the mo-

tion court must stay its hand and permit the resolution of those facts and inferences to be made at trial. [Citations.]" (*Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 794.) To determine whether there is a genuine issue of material fact, the trial court must consider the pleadings and admissions, affidavits in support of and in opposition to the motion and all other evidence before the court. *Yusuf v. Village of Villa Park* (1983), 120 Ill. App. 3d 533, 540.

■ Our review of the record reveals that the trial court considered all the evidence before it, including the depositions of plaintiff's experts and the affidavits of defendants' experts. Unlike defendants' expert witnesses, experts for plaintiff provided questionable testimony. Both admitted their lack of familiarity with the annexed territory and creeks as boundaries. Thus, we find that the trial court did not err in granting defendants' motion for summary judgment and denying plaintiff's motion for the same.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.