(No. 75468.—

CONNIE CUTINELLO *et al.*, Appellees, v. DOUGLAS L. WHITLEY, Director of Revenue, *et al.* (County of Kane *et al.*, Appellants).

*Opinion filed May 19, 1994.—Rehearing denied October 3, 1994.*

410

412

FREEMAN, J., dissenting.

David R. Akemann, State's Attorney, and J. Patrick Jaeger, Assistant State's Attorney, of St. Charles, James Ryan, State's Attorney, Mark Shannahan, Assistant State's Attorney, and Edward A. Burmila, Special Assistant State's Attorney, of Wheaton, and Gary W. Pack, State's Attorney, and Mary Kay Walter, Assistant State's Attorney, of Woodstock, for appellants.

Myron M. Cherry, of Cherry & Flynn, P.C., Robert L. Sklodowski, of Sklodowski, Franklin, Puchalski & Reimer, and Lee J. Schwartz, all of Chicago, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiffs, as purchasers and retailers of motor fuel in Du Page, Kane, and McHenry Counties (Counties), brought a class action suit in the circuit court of Cook County challenging the constitutionality of the County Motor Fuel Tax Law (Ill. Rev. Stat. 1991, ch. 34, par. 5—1035.1). This statute allows the counties of Du Page, Kane, and McHenry to impose a tax on individuals who sell motor fuel at retail in the respective counties. The trial court found the statute unconstitutional and ordered that taxes collected by the Illinois Department of Revenue be placed in a special fund to be disbursed to plaintiffs. The Counties appealed directly to this court. (134 Ill. 2d R. 302(a).) We reverse.

I. Background

In 1989, the General Assembly passed Public Act 86—16. The Act addresses statewide transportation

needs and provides assistance to the different areas of the State. The County Motor Fuel Tax Law is part of this act. It provides, in pertinent part:

> "The county board of the counties of Du Page, Kane and McHenry may, by an ordinance or resolution adopted by an affirmative vote of a majority of the members elected or appointed to the county board, impose a tax upon all persons engaged in the county in the business of selling motor fuel, as now or hereafter defined in the Motor Fuel Tax Law, at retail for the operation of motor vehicles upon public highways or for the operation of recreational watercraft upon waterways. *** The tax may be imposed in half-cent increments, at a rate not exceeding 4 cents per gallon of motor fuel sold at retail within the county for the purpose of use and consumption and not for the purpose of resale. The proceeds from the tax shall be used by the county solely for the purpose of operating, constructing and improving public highways and waterways, and acquiring real property and right-of-ways for public highways and waterways within the county imposing the tax.
>
> A tax imposed *** shall be administered, collected and enforced by the Illinois Department of Revenue ***." (Ill. Rev. Stat. 1991, ch. 34, par. 5—1035.1.)

Pursuant to the authority granted by the statute, the county boards of Du Page, Kane and McHenry Counties approved ordinances imposing a fuel tax per gallon on motor fuel sold at retail. Under the statutory scheme, the Department of Revenue collects the tax and then distributes it to the Counties.

On March 8, 1992, plaintiffs initiated this class action proceeding. Their complaint, as amended, seeks injunctive relief against defendants, the Director of Revenue, the Comptroller of the State of Illinois, the Treasurer of the State of Illinois, Du Page County, as an intervening defendant, and the counties of Kane and McHenry. In count I, plaintiffs allege that the statute violates the special legislation and reasonable classification provisions of the Illinois Constitution (Ill. Const.

1970, art. IV, § 13; Ill. Const. 1970, art. IX, § 2). Plaintiffs also allege in count I that the statute violates the equal protection provisions of the State and Federal Constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV). In counts II and III, plaintiffs allege that the General Assembly violated the single-subject and three-readings requirements of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)) when it enacted the statute. Plaintiffs requested a permanent injunction from the circuit court to enjoin future collection of the taxes. Plaintiffs further requested a preliminary injunction requiring that any taxes collected by the Department of Revenue be placed in a special fund.

On November 10, 1992, the trial court issued a "Memorandum of Decision." In the memorandum, the trial court found that the statute violates the special legislation provision. Because the trial court found the statute unconstitutional, it stated that the county ordinances passed pursuant to the statute were invalid. The trial court did not address the other constitutional challenges raised by plaintiffs. On November 20, based on the memorandum of decision, the trial court granted plaintiffs' request for a preliminary injunction. The trial court ordered that all proceeds collected by the Department of Revenue pursuant to the statute be placed in a special fund. The trial court also certified the action as a class action with the class to be composed of purchasers and sellers of motor fuel.

On January 22, 1993, plaintiffs filed a motion for a temporary restraining order to prevent the Counties from spending fuel tax proceeds disbursed to them by the Department of Revenue before the preliminary injunction issued. In addition, plaintiffs requested that the Counties be required to turn over all tax proceeds to the special fund. The Counties asserted that turnover was improper because plaintiffs' complaint sought only

prospective relief. According to the Counties, plaintiffs sought turnover from the Department of Revenue for current taxes, not for back taxes from the Counties. Initially, the trial court ordered McHenry County to turn over all tax proceeds to the court-appointed trustee and restrained Kane and Du Page Counties from spending any unobligated funds. Before the trial court entered a final ruling on the matter, however, plaintiffs and Du Page County each filed motions for summary judgment.

The trial court entered summary judgment for plaintiffs on April 6, 1993. The trial court again found the statute unconstitutional and permanently enjoined defendants from collecting county motor fuel taxes. This injunction has been stayed pending appeal. The trial court denied plaintiffs' motion for turnover of funds previously collected by Du Page and Kane Counties and ordered that funds turned over by McHenry be returned to McHenry County.

On direct appeal, the Counties raise two issues:

(1) whether the trial court erred in finding the County Motor Fuel Tax Law unconstitutional; and

(2) whether the trial court erred in certifying consumers as members of the plaintiff class.

Plaintiffs have cross-appealed. Plaintiffs ask that the Counties turn over the proceeds disbursed to the Counties before the preliminary injunction issued. We find the County Motor Fuel Tax Law constitutional. Therefore, we do not address the remaining issues.

## II. Special Legislation

Plaintiffs first challenge the statute as violative of the special legislation provision of the Illinois Constitution. We note that plaintiffs also challenge the statute on the basis of equal protection and reasonable classification in count I of their complaint. In their brief to this court, plaintiffs acknowledge that the approach used to

evaluate a special legislation challenge is similar to the approach used to evaluate the other challenges alleged in count I. (See *DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 74-75.) Plaintiffs therefore address only the special legislation challenge, and we do likewise.

The special legislation proscription of the Illinois Constitution provides that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable." (Ill. Const. 1970, art. IV, § 13.) Special legislation confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-10.) The special legislation provision does not, however, prohibit all classification. Its purpose is to prevent arbitrary legislative classifications. *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 379.

It is well settled that review of a special legislation challenge is governed by the same standard that applies to review of equal protection challenges. (*Nevitt v. Langfelder* (1993), 157 Ill. 2d 116, 125; *DeLuna*, 147 Ill. 2d at 75; *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 236; *In re Belmont Fire Protection District*, 111 Ill. 2d at 379.) The statute at issue does not affect a fundamental right or involve a suspect or quasi-suspect classification. Thus, the appropriate standard for review is the rational basis test. (*Nevitt*, 157 Ill. 2d at 125.) Under this standard, a court must determine whether the classification at issue is rationally related to a legitimate State interest. (*Bilyk*, 125 Ill. 2d at 236.) To be constitutional under this inquiry, there must be some rational basis for the classification. (*In re Belmont Fire Protection District*, 111 Ill. 2d at 380.) Whether a rational basis exists for a classification presents a question of law, which we review *de novo*.

When evaluating a classification, a reviewing court

considers the broad discretion of the legislature to create statutory classifications for the general welfare. (*Bilyk*, 125 Ill. 2d at 236.) Thus, classifications made by the legislature are presumed valid, and any reasonable doubts must be resolved in favor of upholding them. (*Bilyk*, 125 Ill. 2d at 235.) Further, a statute will be upheld "if any set of facts can be reasonably conceived which justify distinguishing the class to which the law applies from the class to which the statute is inapplicable." (*Bilyk*, 125 Ill. 2d at 236.) Our review in this regard is therefore deferential, and plaintiffs have the burden of establishing the unreasonableness of the legislative action. *DeLuna*, 147 Ill. 2d at 67.

The Counties argue that the General Assembly has made a classification based on the rapid population growth of Du Page, McHenry, and Kane Counties in northeastern Illinois. The Counties contend that, at the time the legislation was passed, these three counties were the fastest growing counties in the State. According to the Counties, this growth has created a need for building, maintenance, and repair of the Counties' highway systems to a greater degree than exists in counties in other parts of the State. The County Motor Fuel Tax Law, the Counties maintain, is a reasonable means by which to fund necessary transportation projects.

This court has long recognized that a legislative classification may be based on population. (See, *e.g.*, *Nevitt*, 157 Ill. 2d 116 (statute involving disability payments did not apply to home rule units with populations over one million); *People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210 (statute involving tax rates only applied to race tracks located within 100 miles of cities with one million population or in counties of 500,000 population); *Bridgewater*, 51 Ill. 2d 103 (statute involving election of county board members applied

only to counties with a township form of government and a population of three million or less).) In addition, population and territorial differences constitute reasonable bases for addressing transportation and traffic problems. See, *e.g.*, *People ex rel. Curren v. Wood* (1945), 391 Ill. 237.

Initially, plaintiffs argue that the statute is invalid because the legislative action is specifically focused on Du Page, Kane, and McHenry Counties. Legislation, however, is not rendered special simply because it operates in only one part of the State. For example, in *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, this court upheld a classification which subjected Wrigley Field to noise emission regulations promulgated by the Illinois Pollution Control Board. The classification included all stadia in cities with populations in excess of one million that were used for nighttime sporting events. Wrigley Field, although not named in the statute, was the focus of the legislation. In upholding the statute, this court considered a number of factors, such as population density, road congestion, and adjoining land uses, which justified treating Wrigley Field differently from stadia in other parts of the State.

In *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, this court upheld a classification which included those counties contiguous to another county with a population over one million. The legislature authorized these counties to construct sewage facilities and to issue bonds to finance the facilities. Again, the court concluded that the "collar" counties around Cook County were the focus of the legislation. The statute was rational because of the "unique population and territorial combination giving rise to sewage and population problems of unusual magnitude and urgency." (*Smith*, 21 Ill. 2d at 579.) Thus, legislative action

that focuses on a specific area of the State will be upheld if a rational basis exists for distinguishing that area from the rest of the State.

Plaintiffs, however, contend that the legislature did not state its rational basis or make legislative findings regarding population growth and the need for transportation funding in the Counties. The rational basis test does not require such an explanation. It requires only that there be a reasonable relationship between the challenged legislation and a conceivable, and perhaps unarticulated, governmental interest. *Nordlinger v. Hahn* (1992), 505 U.S. 2, 15-16, 120 L. Ed. 2d 1, 15-16, 112 S. Ct. 2326, 2334 ("Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification"); accord *United States R.R. Retirement Board v. Fritz* (1980), 449 U.S. 166, 179, 66 L. Ed. 2d 368, 378, 101 S. Ct. 453, 461; *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 745-46, 89 S. Ct. 1404, 1408.

Plaintiffs argue that, in any event, the statute should have included Lake and Will Counties. Lake and Will Counties, like the three counties named in the statute, are adjacent to Cook County in northeastern Illinois and, according to plaintiffs, were similarly experiencing rapid population growth at the time the legislation was passed. Plaintiffs therefore argue that all five counties are similarly situated and that the difference in treatment by the legislature is irrational. Plaintiffs do not argue that Cook County should have been included in the statute. Cook County is a home rule unit with its own authority to pass a motor fuel tax.

The Counties rely on unauthenticated statistics to suggest that the legislative action is rational. According to the Counties, between 1980 and 1987, Du Page, Kane,

and McHenry Counties were the three fastest growing counties in the State in terms of *percentage* growth. Plaintiffs do not dispute the rapid population growth in the northeastern part of the State. Plaintiffs, however, argue that, in terms of percentage growth, Lake and Will were growing nearly as fast as the Counties. Lake, like the Counties, experienced double-digit percentage growth, although it did rank behind them. Plaintiffs argue that, in terms of *absolute* population growth, Lake County was ranked second although the Counties were the other top ranking counties. Thus, according to plaintiffs, Lake is similarly situated to the Counties, and any classification excluding Lake County is irrational.

The legislature is generally given great flexibility in addressing the different needs throughout the State. Classification is an inevitable consequence of this flexibility. Classification " 'requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.' " (*Federal Communications Comm'n v. Beach Communications, Inc.* (1993), 508 U.S. 307, 315-16, 124 L. Ed. 2d 211, 223, 113 S. Ct. 2096, 2102, quoting *Fritz*, 449 U.S. at 179, 66 L. Ed. 2d at 378-79, 101 S. Ct. at 461.) Thus, it is presumed that the legislature "acted conscientiously and did their duty in making a survey of the conditions prevailing in the [counties] of the State before enacting the classification legislation." *In re Belmont Fire Protection District*, 111 Ill. 2d at 380.

Under the rational basis test, mathematical precision in creating a classification is not required. (*Nevitt*, 157 Ill. 2d at 130.) Review of statistics will always reveal another county that could have been included in a classification. For this reason, "a legislative choice is not subject to courtroom fact-finding and may be based

on rational speculation unsupported by evidence or empirical data." (*Beach Communications, Inc.*, 508 U.S. at 315, 124 L. Ed. 2d at 222, 113 S. Ct. at 2102.) Transportation problems may exist to a lesser degree in other parts of the State than in the Counties. However, "the legislature is not bound to pass one law meeting every exigency, but may consider degrees of evil." *Smith*, 21 Ill. 2d at 579.

Ultimately, it is plaintiffs' burden to show that a classification is unreasonable, not the Counties' burden to show that the classification is reasonable. Plaintiffs have failed to rebut the Counties' population argument. Plaintiffs argue that the legislature could better address transportation needs by basing its classification on congestion factors, not population growth. Under the rational basis test, however, a reviewing court will determine only whether a rational basis exists for the legislative action, not the wisdom of the classification. (*Beach Communications, Inc.*, 508 U.S. at 313, 124 L. Ed. 2d at 221, 113 S. Ct. at 2101.) In any event, plaintiffs' own statistics show that the worst congestion problems exist in the northeastern part of the State. They also show that the Counties rank high in terms of urban congestion based on miles of congested roadway and the cost of relieving the congestion.

We therefore find that the legislative action in question satisfies the rational basis test. The legislature rationally concluded that a greater need for transportation financing existed in Du Page, Kane, and McHenry Counties than in other parts of the State. To hold otherwise would make it more difficult for the General Assembly to pass legislation addressing the transportation needs of specific geographic areas of the State. Transportation needs, by their nature, involve territorial differences. Requiring more than a rational basis for such legislative action is unwarranted.

### III. Single-Subject Requirement

Plaintiffs next challenge the County Motor Fuel Tax Law on the basis of the single-subject requirement. Specifically, plaintiffs argue that Public Act 86—16, which includes the County Motor Fuel Tax Law, violates the single-subject requirement of the Illinois Constitution. The Constitution provides that "[b]ills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." (Ill. Const. 1970, art. IV, § 8(d).) Plaintiffs argue that Public Act 86—16 encompasses a number of provisions that do not relate to any one subject. These provisions involve the county motor fuel tax, the State motor fuel tax, regulation of the Illinois Department of Transportation, funding for the Regional Transportation Authority, and the development of public transportation.

The number of provisions in an act is not determinative of its constitutionality. This court has often stated the approach for determining a violation of the single-subject rule:

" 'The requirement of singleness of subject has been frequently construed, and the applicable principles are settled. The term "subject" is comprehensive in its scope and may be as broad as the legislature chooses, so long as the matters included have a natural or logical connection. An Act may include all matters germane to a general subject, including the means reasonably necessary or appropriate to the accomplishment of legislative purpose. Nor is the constitutional provision a limitation on the comprehensiveness of the subject; rather, it prohibits the inclusion of "discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other." ' " (*People ex rel. Ogilvie v. Lewis* (1971), 49 Ill. 2d 476, 487, quoting *People ex rel. Gutknecht v. City of Chicago* (1953), 414 Ill. 600, 607-08.)

The single-subject requirement is therefore construed liberally and is not intended to handicap the legislature by requiring it to make unnecessarily restrictive laws.

For this reason, courts have often upheld legislation involving comprehensive subjects. See, *e.g., Advanced Systems, Inc. v. Johnson* (1989), 126 Ill. 2d 484 (real property taxation); *People ex rel. Carey v. Board of Education* (1973), 55 Ill. 2d 533 (schools); see also *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310 (domestic relations).

In this case, the various provisions of Public Act 86—16 have a natural and logical connection to transportation. Plaintiffs argue that Public Act 86—16 deals with financing as well as transportation and therefore embraces two subjects. In enacting a bill, the legislature may provide the means necessary to accomplish the legislative purpose. Transportation systems rely heavily on taxation, and other financing mechanisms, to maintain their operations. Thus, financing provisions are reasonably necessary to the accomplishment of the legislative purpose.

IV. Three-Readings Requirement

Lastly, plaintiffs argue that Public Act 86—16 violates the three-readings requirement of the Illinois Constitution. The Constitution provides that "[a] bill shall be read by title on three different days in each house." (Ill. Const. 1970, art. IV, § 8(d).) Plaintiffs argue that the legislature did not follow this procedure and therefore we should invalidate the Act.

Illinois follows the enrolled bill doctrine. This doctrine provides that once the Speaker of the House of Representatives and the President of the Senate certify that the procedural requirements for passing a bill have been met, "a bill is *conclusively* presumed to have met all procedural requirements for passage." (Emphasis added.) (*Geja's Cafe v. Metropolitan Pier & Exposition Authority* (1992), 153 Ill. 2d 239, 259.) Thus, under the enrolled bill doctrine, a court will not invalidate legislation on the basis of the three-readings requirement if the legislation has been certified. In this case,

plaintiffs acknowledge that Public Act 86—16 was certified.

Plaintiffs argue that we should take this opportunity to reconsider the use of the enrolled bill doctrine, relying on *Geja's Cafe*, 153 Ill. 2d 239. In *Geja's Cafe*, this court noted that the General Assembly had not exercised much discipline in following the three-readings requirement. Ultimately, however, this court declined to abandon the enrolled bill doctrine. The *Geja's Cafe* court noted that the 1970 Constitutional Convention specifically contemplated the use of the enrolled bill doctrine to prevent the invalidation of legislation on technical or procedural grounds. (See 6 Record of Proceedings, Sixth Illinois Constitutional Convention 1386-87; see also *Benjamin v. Devon Bank* (1977), 68 Ill. 2d 142, 145.) The Convention determined that the legislature would police itself with respect to procedure. In *Geja's Cafe*, this court also noted that judicial review of legislative procedure would raise a substantial separation of powers concern. We continue to find these reasons persuasive and accordingly decline to abandon the enrolled bill doctrine.

## V. Conclusion

The statute at issue is part of a comprehensive transportation bill that encompasses the entire State. The section of the bill allowing the Counties to pass ordinances imposing a fuel tax is just one part of the entire transportation assistance package. The danger that one part of the State would be favored at the expense of other parts is not implicated here. Ultimately, plaintiffs complain about the action their counties have taken in passing ordinances imposing a fuel tax, as permitted by statute. In this instance, their unhappiness is better rectified through the democratic process at the county board level than through an attack on the constitutionality of the enabling legislation.

For the foregoing reasons, we find that the County Motor Fuel Tax Law is constitutional. We therefore reverse the judgment of the circuit court and remand this cause to that court for further proceedings.

*Reversed and remanded.*

JUSTICE FREEMAN, dissenting:

The majority holds that the County Motor Fuel Tax Law is constitutionally valid. Because I believe that the act constitutes impermissible special legislation, I respectfully dissent.

Special legislation confers a special benefit or exclusive privilege on a person or group of persons to the exclusion of others similarly situated. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-10.) "It arbitrarily, and without a sound, reasonable basis, discriminates in favor of a select group." (Emphasis omitted.) (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38.) Prior to the 1970 constitution, deference was accorded the legislature to determine whether a general law could be made applicable. That deference has been largely eliminated by article IV, section 13, of our current constitution. Under article IV, section 13, whether a general law can be made applicable is a matter for judicial determination. See *Bridgewater*, 51 Ill. 2d at 110; *People ex rel. East Side Levee Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442, 447.

When a law is attacked as special legislation, it is the duty of the courts to decide whether the classification is unreasonable because it preferentially and arbitrarily includes a class to the exclusion of all others. (*Illinois Polygraph Society*, 83 Ill. 2d at 138.) The majority states that "review of a special legislation challenge is governed by the same standard that applies to review of equal protection challenges," and that in this case, the court must determine whether the classification at

issue is rationally related to a legitimate State interest. 161 Ill. 2d at 417.

Although not entirely clear from the majority opinion, determination of whether legislation violates the proscription against special legislation actually requires application of a two-pronged test. (*In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 380.) It is not enough that the classification bear a rational relation to the purpose to be attained by the legislation. (*In re Belmont*, 111 Ill. 2d at 380.) There must be a reasonable basis for the classification *and*, in addition, the classification must bear a reasonable and proper relation to the purposes of the act and the evil it seeks to remedy. (*In re Belmont*, 111 Ill. 2d 373; *Bridgewater*, 51 Ill. 2d at 111; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399.) If relation to purpose were the only relevant inquiry, special legislation could always be sustained, regardless of how arbitrary the distinction between the classes.

"The legislature cannot create a class through the medium of an arbitrary statutory declaration in order that the class may be the recipient of special and exclusive legislative favors." (*In re Belmont*, 111 Ill. 2d at 380, citing *People v. Brown* (1950), 407 Ill. 565, 584.) For a statutory classification to be valid, the classification must be based upon a rational difference of situation or condition found to exist in the persons or objects upon which the classification rests. (*In re Belmont*, 111 Ill. 2d at 380.) It is my opinion that the classification here is an arbitrary distinction not founded upon any substantial difference of situation or condition and it is, therefore, violative of article IV, section 13, of our constitution.

The act provides no reason as to why only Du Page, Kane and McHenry Counties are covered under the act. The act merely names, without any qualifying character-

istics, the three counties included within its scope. In *argument* to this court, the Counties suggest that conferral of the right to tax is because Du Page, Kane and McHenry Counties are the fastest growing counties in the State.

Certainly, as the majority points out, no reason for a classification need be stated. Where some rationale is offered, however, we are not required to ignore it. That being the case, I find a portion of the legislative debates provided in the record to be relevant. The legislators made no mention of rapid growth as the basis for their distinction. They did, however, comment on the desire for economic development in the State and that improved roadways would entice business within the State's borders. (See 86th Ill. Gen. Assem., Senate Proceedings, June 30, 1989, at 256, 257.) Notably, Senator Geo-Karis lent support to the act, stating, "because you want to bring business and industry in this county—in this State, and you're not going to get it if you don't have adequate roads at least maintained well." 86th Ill. Gen. Assem., Senate Proceedings, June 30, 1989, at 309 (statements of Senator Geo-Karis).

Without doubt, the second prong of the special legislation test is satisfied. The gas tax will do just what it purports, with Du Page, Kane and McHenry Counties being the primary beneficiaries of an improved roadway system and economic development. The problem with the act, however, is that the first prong of the test—the basis for the distinction between those blessed counties and those which have not been included under the act— remains unsatisfied. If, in fact, the purpose of the act is to enhance economic development in Illinois, there can be no fair reason to limit participation to only three counties.

As the majority correctly notes, the special legislation provision does not prohibit all classification. It

purports merely to prohibit *arbitrary* legislative classifications. (161 Ill. 2d at 417.) I would agree with the majority that mathematical precision in creating a classification is not required. (See 161 Ill. 2d at 421.) However, in order to defeat a challenge to the reasonableness of a classification, any distinction between classifications, for purposes of special legislation analysis, must be founded upon a rational or substantial difference of situation or condition. (See *In re Belmont*, 111 Ill. 2d at 382.) As related to the purposes of this act, there is no substantial difference of situation which can support this classification.

I also agree with the majority that legislation is not special merely because it operates in only one part of the State. (See 161 Ill. 2d at 419.) In that regard, the majority cites *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, and *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, in support. Clearly, as the majority notes, there was a rational basis for the classifications in those cases. I believe that what was significant in determining that the legislation in those cases was not impermissibly special, however, was that the enactments embraced all those who occupied a like position to those included under the various enactments.

As has been stated, it is the Counties' argument that the act is constitutionally permissible because of the rapid growth in Du Page, McHenry and Kane Counties. Plaintiffs' response that Will and Lake Counties also experienced rapid growth is answered with recognition by the majority of the legislature's flexibility in making classifications. 161 Ill. 2d at 420-21.

The majority's response merely begs the question. This court is charged with the constitutional responsibility to determine whether a general law can be made applicable. We can take no refuge in the recitation of

general legal principles in the avoidance of our constitutional mandate. That the legislature is given "great flexibility in addressing the different needs throughout the State" does not give the legislature carte blanche to enact impermissible special legislation. Further, "this court cannot rule that the legislature is free to enact special legislation simply because 'reform may take one step at a time.' " (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 487, quoting *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465.) Finally, the principles that presumptions are in favor of the validity of an act and that reasonable doubts are to be resolved in favor of its validity cannot serve to frustrate the exercise of our constitutional responsibility. (See *In re Belmont*, 111 Ill. 2d at 386.) Notwithstanding the legislature's discretionary powers, it remains the responsibility of this court to determine whether a general law is or can be made applicable. Ill. Const. 1970, art. IV, § 13.

In order for the act to survive the challenge of special legislation, it must satisfy both prongs of the two-part test as enunciated in *In re Belmont*, reasonable classification and a rational relation to the act's purpose. Braden and Cohn, in their comparative analysis of the Illinois Constitution, provide some guidance on the issue of reasonableness of classifications. In that regard, they suggest that it is difficult to support a classification applicable to cities in excess of 500,000 if there are three large cities with populations of 468,000, 493,000, and 531,000, respectively. However, if the third city was the only one on a lake and if the purpose of the legislation was related in some way to the presence of a lake, then a classification of coverage of cities over 500,000 bordering on a lake would be a rational one. The writers further suggest that a bill applicable to cities over 95,000 but under 100,000 in population would be suspect, for

there can hardly be a legitimate purpose for singling out such a narrow population spread. G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 209 (1969). See, *e.g., Pettibone v. West Chicago Park Commissioners* (1905), 215 Ill. 304 (holding that the distinction between a park district whose limits are co-extensive with a town and a park district in the city whose limits are not co-extensive with the limits of a town is purely arbitrary and without a rational basis).

The Counties argued that Du Page, Kane and McHenry Counties are unique in that they were the fastest growing counties in the State between the years 1980 and 1987. In support of this argument, they presented evidence that between 1980 and 1987, Du Page, Kane and McHenry Counties experienced the highest percentage of population growth in the State. Additionally, the Counties presented evidence that in that same period, those three counties experienced the highest numerical population growth in the State.

Attached to the Counties' cross-motion for summary judgment are two charts. The first chart, titled "Population Change in Illinois Counties Over 100,000: 1980 To 1987," is a bar graph. The graph purports to measure numerical population growth per county in Illinois. The second chart is untitled and bears no page designation. That chart purports to measure percentages of population growth for each Illinois county from 1980 to 1988.

In my view, the Counties' evidence supports the conclusion that Lake County is similarly situated (double-digit percentage increase in population and contiguity to Cook County) to the three counties included within the scope of the act. The exclusion of Lake County from coverage under the act presents a clear example of the arbitrariness of the challenged classification.

Relying, purely for the sake of argument, on the Counties' *unauthenticated* charts, it appears that from 1980 to 1988 the three counties covered by the act experienced the following percentage increases in population growth: Du Page—15.5%, McHenry—15.7%, Kane—13.8%. For that same period, Lake County experienced a 12.5% increase. Clearly, Du Page, McHenry and Kane Counties had the greatest percentages of population growth in comparison to Lake and all other counties in the State. However, I am at a loss as to why Kane County's 13.8% increase, though greater than Lake County's 12.5% increase, is any more significant than Lake County's increase. Further, I fail to understand why Kane County's 13.8% increase compares favorably for inclusion under the act with Du Page County's 15.5% or McHenry County's 15.7%, while Lake County's 12.5% does not similarly compare with Kane County's 13.8%. I would conclude similarly with respect to those counties' actual numerical growth for that period. (Du Page—from 658,858 to 760,800; McHenry—from 147,897 to 171,100; Kane—from 278,405 to 316,800; Lake—from 440,388 to 495,300.)

There is no *substantial* difference in population growth between Lake County and the three counties covered under the act. Accepting the rapid-growth argument, however, what possible justification can there be for excluding Lake County from coverage when its population growth is a mere 1.3% behind that of Kane County?

I am not suggesting that the inclusion of Lake County under the act would have any curative effect. The use of Lake County here is merely exemplary of the arbitrariness of the classification. Any classification must have some reasonable basis.

"A law is general not because it embraces all of the governed, but because it may, from its terms, embrace

all who occupy a like position to those included." (*Bridgewater*, 51 Ill. 2d at 111.) In my view, the County Motor Fuel Tax Law, which merely names Du Page, Kane and McHenry Counties as beneficiaries, creates an arbitrary classification and, therefore, violates the special legislation proscription. If, as the legislative debates suggest, the purpose of the act is to encourage economic development in the State of Illinois, it should matter little which county serves as the conduit for the benefit. A general law could be made applicable.

For the reasons stated, I dissent.