STROH OIL COMPANY, Petitioner-Appellant, v. OFFICE OF THE STATE FIRE MARSHAL *et al.*, Respondents-Appellees.

Fourth District    No. 4—95—0647

Argued March 19, 1996.—Opinion filed May 9, 1996.—Rehearing denied June 11, 1996.

Stephen F. Hedinger (argued), of Mohan, Alewelt, Prillaman & Adami, of Springfield, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Susan Frederick Rhodes (argued), Assistant Attorney General, of counsel), for respondents.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Petitioner, Stroh Oil Company (Stroh), petitioned for direct review in this court of an opinion and order of respondent, Illinois Pollution Control Board (Board). *Stroh Oil Co. v. Office of the State Fire Marshal*, Ill. Pollution Control Bd. Op. 94—215 (July 20, 1995). The Board had affirmed a final eligibility/deductibility determination issued by respondent Office of the State Fire Marshal (OSFM), finding Stroh eligible for access to the Underground Storage Tank Fund (UST Fund) but imposing the maximum $100,000 deductible against Stroh. Stroh argues (1) it should have only been assessed a $15,000 deductible since it had registered one of its underground storage tanks (UST) prior to July 28, 1989 (see 415 ILCS 5/57.9 (West 1994)); (2) OSFM's failure to comply with the Forms Management Program Act (20 ILCS 435/1 *et seq.* (West 1994)) relieved Stroh from the obligation of submitting any registration forms (20 ILCS 435/5.1 (West 1994)); and (3) the UST Fund deductible scheme violates the special legislation clause of the Illinois Constitution and the equal protection clauses of the Illinois and United States Constitutions (Ill. Const. 1970, art. IV, § 13, art. I, § 2; U.S. Const., amend. XIV). We affirm.

Stroh operated as a petroleum retailer at the site in question from 1936 to 1990. The site contained three USTs. In April 1988, Stroh decided to replace one of the existing USTs with a larger UST. The OSFM approved the installation plan and issued the appropriate permit. An inspector from the OSFM supervised the 1988 installation. During another inspection by the OSFM on October 26, 1989,

the registration status of the USTs at the Stroh site was questioned. Although Stroh believed the USTs had been registered previously, a subsequent check of the records indicated the USTs had not, in fact, been registered. On or about October 28, 1989, Stroh submitted the necessary registration forms.

In May 1991, Stroh received permission to remove all USTs on site. On September 16, 1991, all USTs were removed. At that time it became apparent a petroleum release had occurred at some point in the past. Stroh immediately notified what was then known as the Emergency Services and Disaster Agency of the release. Stroh submitted an eligibility-deductibility application to the OSFM on April 19, 1994. Stroh sought reimbursement for its corrective action costs from the UST Fund.

The relevant statute on April 19, 1994, provided a minimum deductible of $10,000 for all UST Fund distributions. If all USTs at a site were registered with the OSFM by July 28, 1989, no increase in the amount of the deductible was applicable. If one but not all USTs at a site were registered by this same date, the deductible would be $15,000 rather than $10,000. Finally, if no USTs at a site were registered by July 28, 1989, the deductible jumped to $100,000. See 415 ILCS 5/57.9(b)(1) through (b)(3) (West 1994).

In its application for access to the UST Fund, Stroh asserted its 1988 UST installation-replacement and accompanying OSFM supervision constituted "registration" of the UST with the OSFM so as to qualify for the $15,000 deductible. On June 30, 1994, the OSFM issued its final eligibility-deductibility determination, rejecting Stroh's "registration" theory and finding the $100,000 deductible applicable to Stroh since no UST had been registered by July 28, 1989. In a written opinion and order dated July 20, 1995, the Board affirmed the OSFM's ruling. This appeal followed.

■ Our review of rulings made by an administrative agency extends to all questions of law and fact presented by the record. 735 ILCS 5/3—110 (West 1994); *Strube v. Pollution Control Board*, 242 Ill. App. 3d 822, 826, 610 N.E.2d 717, 720 (1993). However, we accord questions of fact and questions of law differing degrees of deference. *Township of Harlem v. Environmental Protection Agency*, 265 Ill. App. 3d 41, 44, 637 N.E.2d 1252, 1254 (1994). We consider an agency's findings of fact to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1994). Although we do not give the same deference to an agency's rulings on questions of law, we do afford some deference to an agency's interpretation of a statute which that agency is charged with administering and enforcing. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 345, 538 N.E.2d 1146, 1149

(1989). This deference is substantial if the statute being interpreted is ambiguous. *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 510, 599 N.E.2d 892, 898 (1992).

The facts of this case are not in dispute. The parties do differ on a question of law, namely, whether the OSFM's supervision of Stroh's 1988 installation of a UST constituted "registration" within the meaning of section 4 of the Gasoline Storage Act (Act) (430 ILCS 15/4 (West 1994)). We conclude no registration occurred in this case on or before July 28, 1989, as Stroh failed to properly notify the OSFM of the existence of any of its USTs by that date.

The section which first required all applicable UST owners to register their USTs (by May 8, 1986) was added by Public Act 84—1072, effective July 1, 1986. Pub. Act 84—1072, § 1, eff. July 1, 1986 (1985 Ill. Laws 7096). Public Act 84—1072 required registration to be "on the form provided by the [Illinois Environmental Protection] Agency pursuant to Subtitle I of The Hazardous and Solid Waste Amendments of 1984 (P.L. 98—616) of the Resource Conservation and Recovery Act of 1976 (P.L. 94—580)." Pub. Act 84—1072, § 1, eff. July 1, 1986 (1985 Ill. Laws 7096, 7098). Similarly, Public Act 85—861, effective September 24, 1987, transferred responsibility for maintaining UST records from the Illinois Environmental Protection Agency to the OSFM and required owners to register their USTs "on forms provided by the [OSFM]." Pub. Act 85—861, § 2, eff. September 24, 1987 (1987 Ill. Laws 3607, 3619). No significant changes to the form requirement of the registration procedure have been made since Public Act 85—861. Keith Immke, legal counsel for the division of petroleum and chemical safety of the OSFM, testified that no OSFM regulations pertaining to registration procedures were promulgated until January 1989, but he also testified that prior to that time his office relied on the federal notification form for state notification purposes. The forms at all times have required the UST owner-operator to fill in basic information about his USTs and required the owner-operator to certify that the information provided was complete and accurate. Stroh failed to provide the OSFM with this form by the applicable deadline and has, therefore, failed to satisfy the requirements of the registration procedure under the Act.

■ We reject Stroh's contention that the OSFM's supervision of Stroh's 1988 installation fulfilled the notification requirements of the Act. The inspection report utilized by the OSFM was a form filled out by an OSFM inspector and was separate and distinct from the registration form to be filled out *and certified as true and accurate by the UST owner-operator.* While much of the information entered on

an inspection report by an OSFM inspector may be identical to that required of an owner-operator when filling out a registration form, we agree with the Board that OSFM should not be required to "cull" from the inspection report information which an owner-operator is *statutorily required to provide* to the OSFM (see Pub. Act 84—1072, § 1, eff. July 1, 1986 (1985 Ill. Laws 7096, 7098) (establishing a duty to register existing USTs)), especially where, as here, the testimony indicated inspection and registration duties were performed by different divisions within the OSFM.

■ We also reject Stroh's suggestion that the 1988 UST must have been registered because section 4(b)(6) of the Act (430 ILCS 15/ 4(b)(6) (West 1994)) requires any new tank to be registered prior to installation. This argument is pure and simple bootstrapping—where the law requires things to be done in sequence (here registration before installation), completion of the second task *does not mean the* first requirement is automatically satisfied. To the contrary, we agree with the Board that Stroh's failure to register the tank prior to installation is simply another example of Stroh's failure to comply with its statutory obligations. See Pub. Act 84—1072, § 1, eff. July 1, 1986 (1985 Ill. Laws 7096, 7098) (establishing a duty to register a UST prior to installation).

■ Stroh next contends the OSFM's failure to comply with the Forms Management Program Act (Forms Act) (20 ILCS 435/1 *et seq.* (West 1994)) relieved Stroh of its obligation to register its USTs. Once relieved of this duty, according to Stroh, Stroh would be eligible for the minimum $10,000 deductible. Section 5 of the Forms Act states:

"All forms that seek information from business, agriculture or local governments shall contain a conspicuous notice on the first page setting forth the authorization for the form and stating whether the form is required or voluntary *and any penalties for failure to respond.*" (Emphasis added.) 20 ILCS 435/5 (West 1994).

Section 5.1 of the Forms Act states the consequences of an agency's failure to adhere to the above section:

"If a State agency fails to comply with Section *** 5 of this Act, a business, agricultural enterprise or local government shall be relieved of its obligation to respond to any request for information or to submit or file forms to that agency, provided that such information or form relates to the agency's noncompliance.

Any business, agricultural enterprise or local government failing to respond to a request for information or to submit a form requested by a State agency pursuant to this Section *shall not be subject to any penalty or fine.*" (Emphasis added.) 20 ILCS 435/5.1 (West 1994).

Despite the fact that section 5.1 was added to the Forms Act in 1985

(see Pub. Act 84—1066, § 1, eff. November 27, 1985 (1985 Ill. Laws 7077, 7078)), we are aware of no Illinois decisions interpreting this provision. The legislative history of this section also affords us little guidance in interpreting the purpose and scope of this legislation.

There is a federal counterpart to the Forms Act, the Federal Paperwork Reduction Act of 1980 (Reduction Act) (44 U.S.C. §§ 3501 through 3520 (1988)). The Reduction Act and the federal cases interpreting it do provide some guidance, given the obvious similarities between the two acts. The goals of the Forms Act and the Reduction Act are similar. Compare 44 U.S.C. § 3501 (1988) with 20 ILCS 435/2 (West 1994). The Reduction Act has as its goal "minimizing the federal paperwork burden on individuals, minimizing the cost to the federal government of collecting and using information, and maximizing the usefulness of information collected." *United States v. Hatch*, 919 F.2d 1394, 1396 (9th Cir. 1990); see also 44 U.S.C. § 3501 (1988). Our Forms Act has this same goal, as well as the additional goal, apparent from section 5.1 of the Forms Act and especially relevant in this case, of providing relief to the public when the State fails to warn of the potential consequences of failing to file required forms. See 20 ILCS 435/2, 5.1 (West 1994). Both acts establish a central agency to approve all forms in use by applicable agencies. Compare 44 U.S.C. § 3507(a) (1988) with 20 ILCS 435/3 (West 1994). While the acts differ in what is required to be displayed on each authorized form (compare 44 U.S.C. § 3507(f) (1988) (forms must display a control number issued by the Office of Management and Budget) with 20 ILCS 435/5 (West 1994) (forms must indicate authorization for form, whether form is mandatory or voluntary, and penalties for failure to respond)), the "public protection" provisions of both acts are similar. Section 3512 of the Reduction Act states:

> "Notwithstanding any other provision of law, no person shall be subject *to any penalty* for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter." (Emphasis added.) 44 U.S.C. § 3512 (1988).

While the federal circuits appear to be split on the question of whether the Reduction Act may be successfully raised as an affirmative defense to a criminal indictment (compare *Hatch*, 919 F.2d 1394 (failure to comply with Reduction Act is an affirmative defense, jurisdictional in nature, such that an information fails to charge an offense when an agency has not complied with the Reduction Act), with *Salberg v. United States*, 969 F.2d 379 (7th Cir. 1992) (holding

defense of Reduction Act is not jurisdictional, rejecting its applicability to charged statutory violations), and *United States v. Wunder*, 919 F.2d 34 (6th Cir. 1990) (holding same as *Salberg*)), the federal courts have unanimously held that the Reduction Act may be raised to avoid administrative penalties. It appears the Reduction Act would protect Stroh from the higher deductible at issue in the present case. "Penalty" is broadly defined in section 1320.7(m) of title 5 of the Code of Federal Regulations (CFR) as "the imposition by an agency or court of a fine or other punishment; judgment for monetary damages or equitable relief; or revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit." 5 C.F.R. § 1320.7(m) (1995). Any doubt about the scope of public protection is put to rest by section 1320.5(b) of title 5 of the CFR:

> "Whenever an agency has imposed a collection of information as a means *for proving or satisfying a condition to the receipt of a benefit* or the avoidance of a penalty, and the collection of information does not display a currently valid [Office of Management and Budget] control number or statement ***, the agency shall not treat a person's failure to comply, in and of itself, as grounds *for withholding the benefit* or imposing the penalty. The agency shall instead permit respondents to prove or satisfy the legal conditions in any other reasonable manner." (Emphasis added.) 5 C.F.R. § 1320.5(b) (1995).

That OSFM was in violation of the Forms Act is readily apparent in the present case. The evidence indicates OSFM relied on the federal notification form for state registration purposes at all times relevant to this suit, but that form failed to indicate, among other things, the potential state penalties for failure to complete and return the form. We reject OSFM's contention that its failure to comply with the Forms Act should be excused because the OSFM relied on the federal registration form for state notification purposes. If the federal forms were used for such dual purposes, the Forms Act would still require that Illinois owners-operators be warned about state penalties for failing to fill out the federal form.

However, we are reluctant to interpret "penalty" as used in the Forms Act as broadly as it is interpreted under federal law, in the absence of any indication by our legislature that such a result was intended. We hold imposition of the higher deductible in this case was not a "penalty" within the plain meaning of that term as used in the Forms Act. Had Stroh been assessed statutory fines or penalties for failing to register its USTs, Stroh might raise the affirmative defense of OSFM's failure to comply with the Forms Act. See 430 ILCS 15/7(a)(3) (West 1994) (defining the failure to register USTs as a

business offense "punishable by a fine of not more than $10,000 per day"). Here, a deductible which must be met before accessing public funds is involved, not the statutory penalties set forth in section 7(a)(3) of the Act (430 ILCS 15/7(a)(3) (West 1994)). As we find there was no "penalty" assessed, we do not address whether Stroh was required to request the registration forms to trigger the protections of the Forms Act as an affirmative defense or whether the lack of a lead-in period for the increased deductible levels made the OSFM's compliance with the Forms Act impossible.

Stroh finally contends the deductible scheme of the UST Fund violates the special legislation prohibition and the equal protection clause of the Illinois Constitution, as well as the equal protection clause of the United States Constitution.

■ The Illinois Constitution states "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. Our supreme court has found that special legislation "confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated." *Cutinello v. Whitley*, 161 Ill. 2d 409, 417, 641 N.E.2d 360, 363 (1994). However, not all classifications are prohibited by the special legislation clause—only those which are arbitrary and irrational are proscribed. *In re Belmont Fire Protection District*, 111 Ill. 2d 373, 379, 489 N.E.2d 1385, 1388 (1986). Generally, the same standards govern claimed violations of both the special legislation prohibition and the equal protection clause. See *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117, 127-28, 658 N.E.2d 365, 369-70 (1995); *Nevitt v. Langfelder*, 157 Ill. 2d 116, 125, 623 N.E.2d 281, 285 (1993); *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 370, 489 N.E.2d 1374, 1383 (1986); *Jenkins v. Wu*, 102 Ill. 2d 468, 477, 468 N.E.2d 1162, 1167 (1984). The equal protection clauses of the Illinois and United States Constitutions are interpreted identically. *Jenkins*, 102 Ill. 2d at 477, 468 N.E.2d at 1167.

■ Resolution of this issue turns on one question: are the different deductible levels rationally related to a legitimate state interest? See *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 236, 531 N.E.2d 1, 3 (1988). Since no fundamental right or suspect class is involved, the rational basis test applies when testing the constitutionality of this legislation. *Harris*, 111 Ill. 2d at 371, 489 N.E.2d at 1383. A party challenging the constitutionality of a statute faces a heavy burden. The legislature has broad discretion in creating statutory classifications for the general welfare. *Cutinello*, 161 Ill. 2d at 417-18, 641 N.E.2d at 364. Such statutes come to us with a presumption of validity. *Bilyk*, 125 Ill. 2d at 236, 531 N.E.2d at 3. Any reasonable

doubts will be resolved in favor of upholding the statutory classification scheme, and we will look for any set of facts or circumstances which could possibly justify the distinctions drawn by the legislature. *Cutinello*, 161 Ill. 2d at 418, 641 N.E.2d at 364. The party seeking to have a statute invalidated on constitutional grounds bears the burden of showing the irrationality or arbitrariness of the legislative scheme. *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 67, 588 N.E.2d 1139, 1143 (1992); *Bernier v. Burris*, 113 Ill. 2d 219, 227, 497 N.E.2d 763, 767 (1986).

■ Stroh has failed to meet its burden in regard to the deductible scheme at question here. The State has a legitimate interest in determining the population of USTs within its borders through the registration process, and establishment of a deductible scheme which encourages registration is certainly a rational approach toward attaining this end. The deductible scheme at all times has distinguished between those who register their USTs and those who do not, rewarding those who do and denying the same benefit to those who do not. Even if we regarded the $85,000 difference in deductibles as excessive, those concerns are properly addressed to the legislature, not the courts—we will not pass on the wisdom, or lack thereof, of a particular piece of legislation. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 111, 566 N.E.2d 1283, 1308 (1990).

Stroh alleges the arbitrariness of the July 28, 1989, date for imposition of higher deductibles and the fact that no "lead-in" period was allowed to avoid the higher deductibles. Stroh's position on this issue is significantly weakened by the fact that Stroh had actually been in statutory noncompliance *for over two years* prior to the introduction of the deductible scheme. As Stroh acknowledges in its brief, "registration obligations existed (under both State and federal law) from at least 1986." See also Pub. Act 84—1072, § 1, eff. July 1, 1986 (1985 Ill. Laws 7096, 7098); Hazardous and Solid Waste Amendments of 1984, Pub. L. No. 98—616, § 601, 98 Stat. 3221, 3278 (1984). Since September 24, 1987, Stroh has known or should have known that it was subject to statutory penalties for failing to register its USTs. Public Act 85—861, effective September 24, 1987, made the failure to register a UST a "business offense punishable by a fine of not more than $10,000 per day." Pub. Act 85—861, § 3, eff. September 24, 1987 (1987 Ill. Laws 3607, 3621). Stroh could have been assessed statutory fines in excess of $7 million for its failure to register its USTs from September 24, 1987, to October 28, 1989. Thus, Stroh cannot justifiably object to the imposition of the $100,000 deductible for failing to fulfill its statutory obligations after 764 days of noncompliance, especially where Stroh is merely attempting to access state

funds to cover costs for which Stroh could legitimately be held liable in the absence of the UST Fund.

Stroh notes this court's holding in *Kickapoo Investment, Inc. v. Hartigan*, 153 Ill. App. 3d 785, 787, 506 N.E.2d 365, 366 (1987), in which this court held "[c]ourts will give less deference to classifications based upon status than to classifications based upon activity." See also *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 261, 500 N.E.2d 34, 37 (1986). We fail to see how this holding is anything but detrimental to Stroh's case. The deductible classifications at issue in the present case are based not upon status but upon an express activity—the act of notifying the OSFM of USTs. Entities which engage in the activity encouraged by the Act (registration) are then eligible for a lower deductible, regardless of status.

For the reasons stated, we affirm the decision of the Board.

Affirmed.

GREEN and GARMAN, JJ., concur.